UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Paul Benjamin Goist, # 53614-060, ) | C/A No. 0:07-2928-HMH-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Report and Recommendation |
| ) | |
| United States of America; ) | |
| United States District Court, Northern District of Ohio, ) | |
| Eastern Division; and ) | |
| John/Jane Doe, Statutory Agent Officers, ) | |
| ) | |
| Defendants. ) | |

This is a civil action filed *pro se* by a federal prison inmate. Plaintiff is currently confined at FCI-Bennettsville in Bennettsville, South Carolina, serving a sentence on bank robbery convictions entered by the United States District Court for the Northern District of Ohio, Eastern Division in 2001.

In the Complaint filed in this case, Plaintiff claims that on June 20, 2005, he gave the sentencing court and/or its agents "Subrogation/Diversity Surety Bonds" allegedly valued at $ 480, 000, 000.00 "to discharge liability of the accounts . . . ." Compl. 3. A legal-research and internet search for a description of "Subrogation/Diversity Surety Bonds" was fruitless, and Plaintiff does not elaborate as to what type of "bonds" he provided or what kind of "accounts" he intended to "discharge" with the presentation of those bonds. He does, however, claim that the federal court in Ohio and its administrators/agents, the "Does", have been "unjustly enriched" by an annual 10% return of interest on these bonds that, apparently according to Plaintiff, should have gone to him. He claims to have started asking for an accounting and return of these funds between August 2005-August 2006 and up through March 2007 by submitting "letters of credit" to various federal agents and/or officials, none of which were



responded to.[1] Plaintiff also claims that he filed a formal administrative tort claim with the Department of the Army on February 1, 2007,[2] and that the claim was transferred to the Department of Justice on March 1, 2007. According to Plaintiff, no action was taken on that administrative claim until June 20, 2007, when Plaintiff was directed to submit a "new" or amended tort claim. His new claim was transferred to the Administrative Office of the United States Courts for consideration in late July 2007 (either the 23rd or the 30th). The Complaint filed in this case is dated "August 16, 2007," the envelope in which it was mailed contains an institutional date stamp and post-mark of "August 20, 2007,"[3] and it was received in the Charleston Office of this Court on August 23, 2007.

Under established local procedure in this judicial district, a careful review has been made of Plaintiff's *pro se* Complaint pursuant to the procedural provisions of 28 U.S.C. § § 1915, 1915A, the Prison Litigation Reform Act of 1996, and in light of the following precedents: *Denton v. Hernandez*, 504

---

[1] It is unclear why Plaintiff, a federal prisoner, would have sent "letters of credit" or what purpose he intended to accomplish by sending such documents to various federal officials and agencies from 2005 to 2007. Plaintiff is not a bank or financial institution, and from the allegations contained in the Complaint, it does not appear that he purchased goods or services from any federal officials or agencies. "[A] bank or financial institution" is the typical issuer of such a document, which "authorizes the recipient of the letter (the 'customer' of the bank) to draw amounts of money up to a specified total, consistent with any terms and conditions set forth in the letter." Banks or financial institutions issue letters of credit to serve as an assurance to a seller of goods that the purchaser "will receive payment for any goods it sells to the customer." http://www.expertlaw.com/library/finance/letter_of_credit.html; *see also Black's Law Dictionary* (8th ed. 2004)("letter of credit")("An instrument under which the issuer (usually a bank), at a customer's request, agrees to honor a draft or other demand for payment made by a third party (the *beneficiary*), as long as the draft or demand complies with specified conditions, and regardless of whether any underlying agreement between the customer and the beneficiary is satisfied.").

[2] Plaintiff gives no indication in his Complaint as to why he sent his initial administrative tort claim to the Army when it appears that his dispute is with a federal court. The Army has no authority to consider an administrative tort claim against a different federal entity.

[3] This is the "filing" date of this case for limitations purposes since the Complaint was mailed from within the prison. *Houston v. Lack*, 487 U.S. 266 (1988).



U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden*, *Md. House of Corr.*, 64 F.3d 951 (4th Cir. 1995)(*en banc*); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983); *Boyce v. Alizaduh*, 595 F.2d 948 (4th Cir. 1979).

*Pro se* complaints are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, _ U.S. _, 127 S. Ct. 2197 (2007); *Hughes v. Rowe*, 449 U.S. 5, 9-10 & n.7 (1980); *Cruz v. Beto*, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true. *Fine v. City of N. Y.*, 529 F.2d 70, 74 (2d Cir. 1975). Even under this less stringent standard, however, the Complaint filed in this case is still subject to summary dismissal under the provisions of 28 U.S.C. § 1915(e)(2)(B). The requirement of liberal construction does not mean that this Court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Social Servs.*, 901 F.2d 387(4th Cir. 1990).

## **Discussion**

In order for this Court to hear and decide a case, the Court must, first, have jurisdiction over the subject matter of the litigation. It is well settled that federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute, *Willy v. Coastal Corp.*, 503 U.S. 131, 136-37 (1992); *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986), and which is not to be expanded by judicial decree, *American Fire & Casualty Co. v. Finn*, 341 U.S. 6 (1951). Further, it is to be presumed that a cause lies outside this limited jurisdiction, *Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 11 (1799), and the burden of establishing the contrary rests upon the party asserting jurisdiction, *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936).



The two most commonly recognized and utilized bases for federal court jurisdiction are (1) "federal question," 28 U.S.C. § 1331, and (2) "diversity of citizenship." 28 U.S.C. § 1332.  Although Plaintiff lists several federal statutes in his Complaint as alleged bases for this Court to exercise subject matter jurisdiction in this case, as will be shown below, none of these statutes provide this Court with subject matter jurisdiction over Plaintiff's claims, nor is there any basis for jurisdiction based on diversity.

### Diversity Jurisdiction

First, there is no basis for a finding of diversity jurisdiction over this Complaint.  Although Plaintiff claims that "diversity jurisdiction is invoked as the amount in controversy exceeds seventy five thousand dollars," Compl. 1, his attempted invocation of this jurisdiction is ineffective because there is no diversity of citizenship between/among the parties.  Where, as here, there are no allegations that any Defendant acted outsider the scope of the Defendant's federal employment in their dealings with the disputed "bonds," federal agencies and officials/administrators cannot be considered "residents" or "citizens" of other states for purposes of establishing diversity jurisdiction.  This rule has been established by the courts in order to avoid violation of the doctrine of sovereign immunity.  *See General Ry. Signal Co. v. Corcoran,* 921 F.2d 700, 704-05 (7th Cir. 1991); *Hotep v. U.S.*, No. 3-07-CV-065-K, 2007 WL 1321845, * 2 (N.D. Tex. May  07, 2007); *Hobby v. Mulhern*, No. CV050081PHXSRB, 2005 WL 2739010 (D. Az. Oct. 21, 2005).  Accordingly, even if  Plaintiff's allegations would otherwise be sufficient to support a finding that the $75,000 jurisdictional amount would be in controversy, this does not matter in this case because, in the absence of diversity of citizenship among the parties, the amount in controversy is irrelevant.

### Federal Question Jurisdiction

Second, it is clear that the allegations contained in the Complaint are insufficient to show that the case is a viable one "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C.

4



§ 1331. That is, the Complaint does not state a claim cognizable under this Court's "federal question" jurisdiction. While Plaintiff cites to the following federal statutes in the Complaint, impliedly contending without elaboration that one, some, or all of them provide federal-question jurisdiction over his claims; 28 U.S.C. §§ 1331(a)(1), 1335(a), 1346, 1352, 1491(a)(b), 1494, 2671-75, 2680; 5 U.S.C. § 701-06; and 41 U.S.C. § 601-613; for the following reasons, none of these statutes require this Court to exercise federal question jurisdiction in this case.

Section 1331 is the general federal question jurisdiction statute. In the absence of the applicability of some other specific federal statute, treaty, or constitutional provision to Plaintiff's claims, § 1331 does not provide any kind of independent private right of action cognizable under federal question jurisdiction. *See, e.g.*, *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 812 (1986); *U.S. ex rel. FTC v. Larkin, Hoffman, Daly & Lindgren, Ltd.*, 841 F. Supp. 899, 903 (D. Minn. 1993); *Lyle v. Village of Golden Valley*, 310 F. Supp. 852, 855 (D. Minn. 1970). Further, § 1335(a) does not apply in this case or provide this Court with subject matter jurisdiction because the Plaintiff's allegations do not indicate that this is an interpleader action. Also, the Complaint does not contain any facts showing that the "Surety/Diversity Bond" allegedly provided by Plaintiff is the type of "bond executed under federal law" to which 28 U.S.C. § 1352 applies. Accordingly, § 1352 does not provide this Court with subject matter jurisdiction over Plaintiff's claims. *See, e.g.*, *Mudd v. Teague*, 220 F.2d 162, 163-64 (8th Cir. 1955)(right of possession and payment on a bond would not be affected by federal statutes; no federal question jurisdiction under § 1352 over disputed ownership); *Rader v. Mfrs. Cas. Ins. Co.*, 242 F.2d 419, 427 (2d Cir. 1957)(same; private bond not executed in support of a federal construction project). *Cf. Del Hur, Inc. v. National Union Fire Ins. Co.*, 94 F.3d 548 (9th Cir. 1996)(dispute under performance/payment bond executed *under a specific federal*



*contracting regulation* to secure payment to contractors on a federal HUD project; subject matter jurisdiction available under § 1352).

Sections 1491 and 1494 each provide jurisdiction to the Court of Claims over certain types of claims against the federal government based on contracts entered into by federal agencies, none of which are present in this case. While § 1491 also provides subject matter jurisdiction to district courts in certain, specific types of cases: those arising from the solicitation of bids for federal projects or from procurement contracts involving federal agencies, none of those types of claims are presented in this case. Accordingly, neither § 1491 or § 1494 provides this Court with subject matter jurisdiction over Plaintiff's claims.

The same is true of the sections of Title 5 of the United States Code cited by Plaintiff: 5 U.S.C. § 701-06. Those sections, which are part of the Federal Administrative Procedures Act (APA), concern the limited right to judicial review by federal courts of final action taken by federal agencies. However, it is clear from Plaintiff's own allegations that his attempts to administratively present his claims to the appropriate federal agencies have not yet reached the stage of finality, and, accordingly, this case cannot be considered under our judicial review jurisdiction under the APA.

Finally, 41 U.S.C. §§ 601-13 do not provide subject matter jurisdiction over Plaintiff's Complaint because those sections relate only to review jurisdiction (not original subject matter jurisdiction) of the Court of Claims and federal district courts in limited factual circumstances not present in this case. Under those statutes, the Court of Claims or federal district courts can review administrative decisions made by "boards of contract appeals" or other "agency boards" specially established to consider governmental contracting disputes. No such administrative decision appears to have been rendered in Plaintiff's dispute over his bond proceeds, so these statutes do not provide subject matter jurisdiction over Plaintiff's claims. Plaintiff's citation, without factual support or any explanation, of all of these clearly inapplicable federal



statutes as a basis for federal jurisdiction over his claims indicates substantial frivolity in Plaintiff's Complaint.

### Federal Torts Claim Act

In light of Plaintiff's citation of 28 U.S.C. §§ 1346, 2671-75, and 2680, all of which are part of the Federal Torts Claim Act (FTCA), and his allegations about filing formal administrative claims alleging tortuous misconduct by a federal agency and/or its employees or officials, this case may be liberally construed as one seeking injunctive and compensatory damage relief from the United States government under the FTCA. Considered as such, the FTCA does not provide this Court with subject matter jurisdiction over Plaintiff's claims because this case was filed prematurely.

Under the well-established legal doctrine of sovereign immunity, the United States, its departments, and agencies cannot be sued without their express consent. *U. S. Mitchell*, 463 U.S. 206, 212 (1983). The bar of sovereign immunity cannot be avoided by naming officers or employees of the United States as defendants because, assuming those officers/employees are sued in their official capacity, they are, essentially, performing the responsibilities of the United States itself and thus are entitled to immunity as well. *See Gilbert v. Da Grossa*, 756 F.2d 1455, 1458 (9th Cir. 1985). *Cf. Hawaii v. Gordon*, 373 U.S. 57, 58 (1963).

One of the few areas in which the United States government has waived its sovereign immunity is in the area of personal injuries allegedly caused by government officials or employees acting within the scope of their employment. Under specific and limited circumstances, an injured party may sue the United States under the FTCA for damages allegedly caused by an agency such as the Department of Justice or the Administrative Office of the Courts or by federal employees such as Defendants Doe. However, to do so, litigants must ***strictly*** comply with the requirements of the FTCA, *U. S. v. Kubrick*, 444



U.S. 111, 117-18 (1979), and the burden is on the plaintiff in an FTCA case to prove that he/she completed all the conditions precedent to filing a lawsuit.  *Kielwien v. U. S.*, 540 F.2d 676, 679 (4th Cir. 1976).

One of the strict requirements of the FTCA is that a claimant cannot proceed with a lawsuit in federal district court based on matters properly submitted to an agency until the agency issues a final denial of the administrative claim or unless the agency fails to act within six (6) months of being presented with a valid administrative claim.  28 U.S.C. § 2675(a).[4]  Plaintiff's own allegations disclose that he did not submit his formal administrative claim under the FTCA to the correct federal agency: the Administrative Office of the Courts, until July 20, 2007, considerably less than six months before he filed this case.  It is also clear that Plaintiff did not wait for a formal decision on that administrative claim, nor did he allow the agency six months to act, before filing this case.  Although he states that he "has not heard from the Party named in paragraph thirty (30) [the Administrative Office of the United States Courts] and [it] is likely that the administrative tort claim has been denied," Compl. 8, such asserted likelihood of denial is mere speculation on Plaintiff's part and does not amount to a formal decision on that claim or six-month pendency

---

[4] Section 2675(a) states:

> (a) An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail*. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.



as required by § 2675. As a result, it is obvious from the face of the Complaint that Plaintiff did not properly exhaust his administrative remedies under the FTCA before filing this lawsuit, and, in the absence of any other viable basis for the exercise of federal subject matter jurisdiction on the face of the Complaint, this case cannot proceed in this Court. *Myers & Myers, Inc. v. U. S. Postal Serv.*, 527 F.2d 1252, 1256 (2d Cir. 1975); *see also* 28 C.F.R. § 14.2 and the "STANDARD FORM 95." *See generally* Diane M. Allen, Annotation, *When Is Claim Properly Presented to Federal Agency, under 28 U.S.C.A. § 2675(a), for Purposes of Satisfying Prerequisite to Subsequent Suit under Federal Tort Claims Act*, 73 A.L.R.Fed. 338 (2004).[5]

### Recommendation

Accordingly, it is recommended that the Court dismiss the Complaint in this case *without prejudice* and without issuance and service of process for lack of subject matter jurisdiction and frivolity. *See Denton v. Hernandez*; *Neitzke v. Williams; Haines v. Kerner; Brown v. Briscoe*, 998 F.2d 201, 202-04 (4th Cir. 1993); *Boyce v. Alizaduh; Todd v. Baskerville*, 712 F.2d at 74; *see also* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal). Since the Complaint filed in this case clearly fails to state a claim on which relief may be granted and is substantially frivolous, I also recommend that

---

[5] Plaintiff's state-based common-law claims for "unjust enrichment, accounting, conversion, adjustment of account, personal replevin, or breach of implied contract must also be dismissed. Such claims cannot be considered under our pendent or supplemental jurisdiction since there is no basis for this Court to exercise its federal subject matter jurisdiction in this case. *See Cianbro Corporation v. Jeffcoat & Martin*, 804 F. Supp. 784, 788-91 (D.S.C. 1992); *see also United Mine Workers v. Gibbs*, 383 U.S. 715 (1966); *Webb v. McCullough*, 828 F.2d 1151, 1160 (6th Cir. 1987).

9



this case be deemed a "strike" for purposes of the "three strikes" rule of 28 U.S.C. § 1915(g).

        Plaintiff's attention is directed to the important notice on the next page.

                                                  Bristow Marchant
                                                  United States Magistrate Judge

September   17 , 2007
Columbia, South Carolina

10



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

